# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# (HOUSTON)

| | |
|---|---|
| **NANCY SANTANA** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.:_____ |
| ) | |
| **CHRISTINE WORMUTH, SECRETARY** ) | |
| **U.S. DEPARTMENT OF THE ARMY** ) | |
| ) | **VERIFIED COMPLAINT** |
| ) | |
| ) | **JURY DEMANDED** |
| Defendant. ) | |

**COMES NOW** the Plaintiff, Nancy Santana, by and through undersigned counsel, Tully Rinckey, PLLC, and hereby states the following complaint against Defendant, Christine Wormuth, Secretary, Department of the Army (hereinafter "Defendant" or "Agency")), for the cause of action stated as follows:

## I.   NATURE OF THE CASE

1. Plaintiff Nancy Santana ("Plaintiff" or "Ms. Santana") brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. §791 et. seq. for relief from discrimination and hostile work environment based on disability (Post Traumatic Stress Disorder) and retaliation for prior protected activity.

1

## II. THE PARTIES

2. Plaintiff, Nancy Santana (hereinafter "Ms. Santana" or "Plaintiff") is an individual resident of the State of Delaware.

3. Defendant is the Secretary of the Department of Army, named in her official capacity pursuant to 42 U.S.C. § 2000e-16.

4. Plaintiff was employed by the Department of the Army as a Contract Specialist.

5. Defendant is a government entity with headquarters in Washington DC. Defendant carries on regular business in Texas.

6. Defendant is properly named as the head of the Agency pursuant to 42 U.S.C. § 2000e-16.

## III. JURISDICTION AND VENUE

7. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, § 1332, §1367, and 42 U.S.C §§ 2000e-5, as it asserts claims that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et. seq*. and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. §791 et. seq.

8. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

9. Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of Defendant, an entity that operates within the state of Texas, and which actions occurred within this judicial district. 28 U.S.C. § 1391.

10. Venue is further appropriate because a substantial part of the events or omissions giving rise to this Complaint occurred within this district.

## IV. EXHAUSTION OF REMEDIES

11. Plaintiff has exhausted all of her administrative remedies related to this case. *See* Exhibit 1, Decision by the Equal Employment Opportunity Commission ("EEOC") Office of Federal Operations.

12. On May 4, 2015, Plaintiff timely initiated EEO Counseling against the Defendant.

13. On July 28, 2015, Plaintiff timely filed a formal EEO complaint against the Defendant.

14. On September 14, 2015, the Agency accepted Plaintiff's formal complaint for investigation.

15. At the conclusion of the Agency's investigation, Plaintiff requested an EEOC hearing.

16. On January 8, 2020, the EEOC issued a Decision and Order Entering Judgment in favor of Defendant.

17. On March 25, 2020, Plaintiff timely filed her Notice of Appeal of the Agency's Final Order.

18. On or about March 29, 2021, the EEOC Office of Federal Operations issued a Final Decision affirming the Agency's Final Order and notified Plaintiff of her right to sue in Federal District Court. *See* Exhibit 1.

19. Plaintiff timely files this action within ninety ("90") days of receipt the Decision by the EEOC Office of Federal Operations. This complaint is therefore proper and timely.

## V. FACTS

20. Ms. Santana began working for the Agency in 2010 as a Contract Specialist Intern at the Army Contracting Command-National Capital Region in Alexandria, Virginia.

21. In 2013, Plaintiff was reassigned to the Mission and Installation Contracting Command (hereinafter "MICC") located at Fort Sam in Houston, Texas.

3

22. Plaintiff suffers from Post-Traumatic Stress Disorder (hereinafter "PTSD"), which is connected to her service in the armed forces.

23. Plaintiff was diagnosed with PTSD after undergoing a neuro-psychological evaluation on or about April 15, 2014.

24. In or around this same time frame, March through April 2014, Plaintiff reported a hostile work environment to Mr. Steve Henry (hereinafter "Mr. Henry"), Employee Assistance Program Coordinator ("EAPC").

25. In April 2014, Mr. Charles Trumpfheller (hereinafter "Mr. Trumpfheller"), Supervisory Contract Specialist, GS-14, was Plaintiff's first line supervisor and Mr. Ray Harris (hereinafter "Mr. Harris"), Director, served as Plaintiff's third-line supervisor.

26. In or around March and April of 2014, Plaintiff contacted Mr. Steve Henry (hereinafter "Mr. Henry"), Employee Assistance Program Coordinator to obtain guidance on initiating the reasonable accommodation process.

27. In or around September 2014, Plaintiff requested as a reasonable accommodation, to work in either the contract close-out section or the government purchase card section.

28. In September of 2014, Mr. Trumpfheller first became aware of Plaintiff's disabilities.

29. Despite knowing of Plaintiff's disabilities and Plaintiff's accommodation request, Mr. Trumpfheller requested that Plaintiff undergo a Fitness for Duty ("FFD") examination.

30. In October 2014, Plaintiff was transferred to the contract close-out section.

31. In January 2015, Plaintiff was reassigned to the Government Purchase Card ("GPC") section and she believed this to be the reasonable accommodation.

32. The Agency did not consider the Plaintiff's transfers to be reasonable accommodations.

33. In February of 2015, Plaintiff underwent a Fitness For Duty examination ("FFD").

34. On or about March 17, 2015, Plaintiff underwent a second FFD examination.

4

35. On or about March 19, 2015, Dr. Oliverson, who examined Plaintiff under the FFD stated the following in regards to Plaintiff's condition: "It should be noted that Ms. Santana's condition *has not been fully evaluated* and she is not receiving any care/treatment. She is not eligible for care in the Army system so we cannot pursue further evaluation or treatment here. However, we strongly encourage her to seek this care. We *feel confident that she can be helped significantly* and would be able to function much better. Whether or not treatment would render her fit for duty in her present position is not possible to determine at this point." (*Emphasis added*).

36. On or about April 24, 2015, Mr. Trumpfheller determined that Ms. Santana could not be reasonably accommodated at her position by either restructuring the position she was in or modifying her environment.

37. Mr. Trumpfheller's determination on Plaintiff's reasonable accommodation request did not contain an analysis of Plaintiff's medical condition, her particular symptoms, the essential job functions, or any indication that Mr. Trumpfheller engaged in the interactive process to determine an effective accommodation.

38. On or about April 30, 2015, the Agency, by and through the Deputy Chief of Staff, determined that there were no available vacant positions.

39. In March and April of 2015, Plaintiff spoke to MICC Director, Ray Harris, on three separate occasions to report an on-going hostile work environment.

40. In response, Mr. Harris reminded Plaintiff of her right to file an EEO complaint if she believed her rights were being violated.

41. Mr. Harris informed Mr. Trumpfheller of Plaintiff's hostile work environment complaints, but Mr. Harris did not take any further action to remedy Santana's concerns.

42. On or about May 1, 2015, Plaintiff received both her 2013 and 2014 evaluations, which reflected ratings of "unsatisfactory." The following week, Plaintiff received a 16-month evaluation of her performance which replaced the 2013 and 2014 evaluations.

43. On or about May 4, 2015, Plaintiff engaged in EEO activity when she made contact with an EEO counselor.

44. On or about May 4, 2015, the same day Ms. Santana made contact with an EEO counselor, Ms. Santana reached out to Mr. Harris, her third line supervisor and notified him via email that she was exercising her right to file a complaint with the EEOC.

45. On or about May 6, 2015, Mr. Trumpfheller informed Plaintiff that the Agency had not found a suitable position for her as a reasonable accommodation.

46. On or about May 6, 2015, Plaintiff received a notice of proposed termination from her Contract Specialist GS-11 position for medical inability to perform.

47. On or about May 18, 2015, Mr. Trumpfheller became aware of Plaintiff's EEO activity.

48. On or about May 20, 2015, Mr. Trumpfheller claimed the Agency could not reassign Plaintiff to a new position as a reasonable accommodation.

49. On or about May 20, 2015, Plaintiff received a negative evaluation.

50. On or about May 23, 2015, Ms. Elsie Cisneros, uploaded Plaintiff's medical documents, including Plaintiff's neuro-psychological evaluation, to the Joint Personnel Adjudication System ("JPAS") at the direction of COL Timothy Strange.

51. On or about May 31, 2015, Ms. Santana attended a Yellow Ribbon conference at the Radisson Hotel, related to the 4th ESC's military deployment. At the conference, COL TerMeer, Plaintiff's Army Reserve Unit Commander, and COL Keller briefed Plaintiff about her medical condition.

52. On June 4, 2015, the Agency decided to remove Plaintiff from employment.

53. On or about June 9, 2015, Plaintiff was removed from the overseas deployment roster. This same day, Plaintiff attended a counseling session with COL Herman TerMeer to discuss her disabilities and the Agency's concerns.

54. Plaintiff was selected for deployment to Kuwait, effective on or about June 18, 2015.

55. Subsequently Plaintiff was not allowed to go on the deployment to Kuwait, and the reasons provided were that she suffered from PTSD. However, Plaintiff had previously deployed when she was diagnosed with PTSD.

## VI. CAUSES OF ACTION

### COUNT ONE

**(Disability Discrimination, Failure to Accommodate in Violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C.701 *et. seq*.)**

56. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

57. Plaintiff is an individual with a qualified disability as she suffers from a mental disability, Post-Traumatic Stress Disorder ("PTSD").

58. The medical documentation provided by Plaintiff to Defendant established that her medical condition is disabling and affected, among other things, interferes impacts major life activities, including concentrating, thinking, communicating, and working.

59. Plaintiff requested as a reasonable accommodation, to work in either the contract close-out section or the government purchase card section.

60. Plaintiff was transferred multiple times, but ultimately these transfers were not considered the reasonable accommodation she had requested.

61. Upon information and belief, Defendant provided an accommodation to similarly situated employees.

62. In or around May of 2015, the Agency, by and through Plaintiff's first line supervisor, Mr. Trumpfheller, denied Plaintiff's reasonable accommodation request.

63. The reasonable accommodation requested by Plaintiff would not have caused an undue burden or hardship on Defendant.

64. Defendant's failure to provide Plaintiff the reasonable accommodation requested deprived Plaintiff of the opportunity to be as productive as her co-workers in the same work environment.

65. Plaintiff was able to perform the duties and responsibilities of her position with or without a reasonable accommodation.

66. As a direct and proximate cause of denying Plaintiff's reasonable accommodation request, Plaintiff was ultimately terminated.

67. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages, including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs, and is entitled to all available legal and equitable remedies.

68. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

69. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.

## COUNT TWO

**Disability Discrimination, in Violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C.701 *et. seq*.)**

70. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

71. At all relevant times, Plaintiff was an "employee" of Defendant under Rehabilitation Act of 1973, as amended, 29 U.S.C.701 et. seq.

72. At all relevant times, Defendant was an "employer" of Plaintiff under Rehabilitation Act of 1973, as amended, 29 U.S.C.701 et. seq.

73. Plaintiff is an individual with a qualified disability as she suffers from a mental disability, Post-Traumatic Stress Disorder ("PTSD").

74. Plaintiff was able to perform the functions of her position and otherwise able to meet Defendant's reasonable expectations.

75. Plaintiff could perform the essential functions of her position with or without an accommodation.

76. Plaintiff suffered adverse employment actions when she: (1) was not provided a reasonable accommodation, which led to her termination from the Agency; (2) when her sensitive medical documents were uploaded into JPAS thereby affecting her scheduled deployment to Kuwait; and, (3) when she was issued a negative performance review.

77. By its actions alleged herein, Defendant has unlawfully discriminated against Plaintiff on the basis of her actual disability and failed to make reasonable accommodation to Plaintiff in violation of Rehabilitation Act of 1973, as amended, 29 U.S.C.701 et. seq..

78. As a result of Defendant's discrimination, Plaintiff suffered an adverse employment actions. The alleged reasons for the adverse action taken against Plaintiff are a pretext for unlawful discrimination and/or retaliation.

79. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment.

80. Defendant knew that Plaintiff was disabled prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected because of her disabilities.

81. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her disability (PTSD).

82. Defendant has limited, segregated and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her disability (PTSD).

83. Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably then Plaintiff in the terms and conditions of employment.

84. Plaintiff's disabilities were a determining factor in Defendant's unlawful conduct toward Plaintiff.

85. Plaintiff's disabilities were a motivating factor in Defendant's unlawful conduct toward Plaintiff.

86. The reasons proffered by Defendant for its unlawful conduct are pre-textual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

87. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her disability.

88. Defendant discriminated against Plaintiff because of her disability by engaging in, tolerating or failing to prevent disability discrimination and by failing to take action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

89. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

90. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

91. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, due to Defendant's discriminatory and retaliatory conduct and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

92. Plaintiff has incurred lost wages, loss of reputation now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

## **COUNT THREE**

**(Discrimination on the Basis of Reprisal in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et. seq* and the Rehabilitation Act of 1973, as amended, 29 U.S.C.701 et. seq. .)**

93. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

94. Plaintiff engaged in protected EEO activity when she requested a reasonable accommodation.

95. Plaintiff also engaged in protected EEO activity when she complained to her supervisors of the unlawful, hostile, and discriminatory and retaliatory treatment, of which she was being subjected.

96. In March and April 2015, Plaintiff complained to Mr. Harris about a hostile work environment, who in turn reported Plaintiff's concerns to Mr. Trumpfheller.

97. Since Plaintiff's concerns and complaints about a hostile work environment went unresolved, Plaintiff made contact with an EEO counselor on or about May 4, 2015.

98. On or about May 4, 2015, the same day she filed her EEO complaint, Plaintiff reached out to her third line supervisor, Mr. Harris and informed him that she was filing an EEO complaint.

99. Soon after complaining, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

100. In particular, in response to and because of Plaintiff's protected activity, Defendant, by and through its agents, servants, and employees took adverse action against her by denying her accommodation request, issuing negative performance evaluations, uploading her sensitive medical documentation into JPAS thereby affecting her scheduled deployment to Kuwait and terminating her employment.

101. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her participation and opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

102. Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff, by Defendant's Human Resource representatives, or otherwise engaged in the complaint process.

103. The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected activity.

104. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

105. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

106. Similarly situated employees (no known prior protected activity) were not subjected to the same, similar or any adverse treatment.

107. The adverse treatment that Plaintiff was being subjected to by Defendant was obvious to her co-workers who could and did observe the distress that the treatment caused Plaintiff.

108. Defendant's unlawful conduct has created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect on bringing discrimination complaints to the fore in violation of Title VII.

109. The reasons proffered by Defendant for its unlawful conduct are pre-textual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

110. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

111. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation and opposition to Defendant's discriminatory conduct.

112. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

113. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

114. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

115. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

## COUNT FOUR

### (Disability Discrimination, Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, et. seq and the Rehabilitation Act of 1973, as amended, 29 U.S.C.701 et. seq. .)

116. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

117. As a result of Plaintiff's protected status, Plaintiff's supervisors routinely humiliated Plaintiff and engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment in violation of Title VII, the ADA, and the Rehabilitation Act.

118. Plaintiff was regularly and continually subjected to harassing conduct that alleged throughout this Complaint, which created a hostile and abusive work environment.

119. Plaintiff believes that she was subjected to a hostile work environment based on her disability (physical).

120. Defendant's unlawful conduct was unwelcome.

121. Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint, including her reasonable accommodation being denied, receiving negative performance evaluations, the uploading her sensitive medical documentation into JPAS thereby affecting her scheduled deployment to Kuwait and terminating her employment. which exacerbated her condition, and being subjected to derogatory remarks about people with disabilities, created a hostile and abusive work environment.

122. Plaintiff was subjected to harassment because her disability and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

123. Defendant knew or should have known of the harassment. Defendant failed to

adequately investigate the harassment and took no effective, immediate or remedial action. Despite Plaintiff's complaints, the harassment continued unabated and increased over time.

124. By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

125. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.

126. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages –including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

127. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

128. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award monetary damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct, including for lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

b. Reinstatement;

c. Award medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g. Require supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues set forth herein.

Respectfully Submitted,

*Michael C. Fallings*

_____
Michael Fallings, Esq.
Partner
Tully Rinckey, PLLC.
3724 Executive Center Drive, Suite 205
Austin, Texas 78731
mfallings@fedattorney.com
(512) 225-2822